## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                             Case No. 15-80607-WRS
                                                                  Chapter 13
ANGELA PORTER-DENNIS,

    Debtor

## MEMORANDUM DECISION

This case is before the Court on the objection to confirmation filed by TitleMax of Alabama, Inc. (Doc. 30). TitleMax objects to the proposal of Debtor Angela Porter-Dennis to modify its rights under two pawn contracts on the grounds that the plan is not proposed in good faith. The Court held an evidentiary hearing on November 18, 2015, at which the Debtor was present in person and through her counsel, Paul D. Esco, and TitleMax was present through its counsel, Charles N. Miller. For the reasons set forth below, the objection to confirmation is SUSTAINED.

## I. FACTS & PROCEDURAL HISTORY

Angela Porter-Dennis ("Porter-Dennis") pawned her 2002 Lincoln LS ("the Lincoln") to TitleMax of Alabama, Inc. ("TitleMax") at its location in Opelika, Alabama, sometime in December 2014 in exchange for a $2,257.11 loan. Porter-Dennis retained possession of the Lincoln, but left the certificate of title to the Lincoln with TitleMax, and TitleMax subsequently obtained a new certificate of title listing it as a lienholder. The pawn contract provided that Porter-Dennis had 30 days to either pay the full redemption price of $2,482.60, renew the contract for 30 days by paying a pawn charge of $225.49, or forfeit the Lincoln. It appears that Porter-Dennis renewed the pawn contract several times by payment of the $225.49 pawn charges,

most recently on April 15, 2015.[1] Under that renewal, Porter-Dennis had until May 15, 2015, to either pay the redemption price, renew the pawn contract again, or forfeit the Lincoln.

Instead of choosing any of those options, Porter-Dennis filed Chapter 13 bankruptcy on May 13, 2015. (Doc. 1). Ten days later, on May 23, 2015, Porter-Dennis pawned a 1997 Ford Mustang ("the Ford") to TitleMax at its location in Auburn, Alabama, in exchange for a $1,500 loan.[2] Under the terms of the pawn contract, Porter-Dennis was obligated to pay $1,724.85 to redeem the Ford, renew the contract by paying the $224.85 pawn charge, or forfeit the vehicle. Jasmine Mitchell, the TitleMax employee who received Porter-Dennis's application for the loan, testified that she asked Porter-Dennis whether she was in bankruptcy or was about to file bankruptcy, and that Porter-Dennis told her she was not. As before, Porter-Dennis retained possession of the Ford but gave TitleMax its certificate of title, and TitleMax timely perfected its lien by obtaining a new certificate of title listing it as a lienholder. Porter-Dennis has not paid the redemption price or renewed the pawn contract on the Ford. She maintains possession of both vehicles.

Porter-Dennis did not disclose the existence of the Ford on her Schedule B when she filed bankruptcy, and did not amend Schedule B to disclose the Ford until July 9, 2015. (Docs. 1, 15).

---

[1] TitleMax's objection only referred to the April 2015 renewal as if it was a stand-alone contract, and only attached the April 2015 contract in support of its objection. At the evidentiary hearing it was revealed that Porter-Dennis had originally pawned the Lincoln in December 2014 and that she had renewed it monthly through April 15 2015; TitleMax's application date of December 22, 2014 on the Lincoln's certificate of title bears this out. Though neither party introduced the December 2014 pawn contract into evidence, the Court infers that it matches the April 2015 renewal contract in all respects except for the date of maturity.

[2] According to TitleMax's objection, this location does business as "TitleBucks," but is owned by TitleMax. (Doc. 30). TitleMax is listed as the lienholder on the certificate of title for the Ford. To avoid confusion the Court will refer to these locations simply as "TitleMax."

At the evidentiary hearing Porter-Dennis testified that the Ford belongs to her son, but that the title is in her name. She also testified that, although she had met with her counsel about filing bankruptcy, she did not think she was actually in bankruptcy when she pawned the Ford because she thought that bankruptcy begins when she has to appear in court. This is her fifth bankruptcy case since 1999.[3]

In her amended Chapter 13 plan Porter-Dennis proposes to pay TitleMax $2,050 on the Lincoln and $2,000 on the Ford, both at 4.25% interest, resulting in monthly payments to TitleMax of $80 ($40 for each vehicle) through her plan. (Docs. 16, 27). TitleMax objects to confirmation on the grounds that Porter-Dennis has not proposed the plan in good faith.[4] (Doc. 30).

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This is a final order.

The Court "shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law[.]" 11 U.S.C. § 1325(a)(3). The Eleventh Circuit has annunciated

---

[3] Her prior bankruptcies were filed in 1999, 2001, 2006, and 2012. (Case Nos. 99-04008; 01-05326; 06-80498; 12-80771). She received discharges on her 2001 and 2006 cases.

[4] TitleMax also asserts that Porter-Dennis's bankruptcy estate lacks a sufficient property interest for her to be able to modify its contract rights and cram down the vehicles over its objection. *See* 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5)(B). The Court does not reach this issue in sustaining TitleMax's objection.

-3-

the following non-exhaustive list of factors for bankruptcy courts to consider in determining whether a plan has been proposed in good faith:

    (1)    The amount of the debtor's income from all sources;

    (2)    The living expenses of the debtor and her dependents;

    (3)    The amount of attorney's fees;

    (4)    The probable or expected duration of the debtor's Chapter 13 plan;

    (5)    The motivations of the debtor and her sincerity in seeking relief under the provisions of Chapter 13;

    (6)    The debtor's degree of effort;

    (7)    The debtor's ability to earn and the likelihood of fluctuation in her earnings;

    (8)    Special circumstances such as inordinate medical expense;

    (9)    The frequency with which the debtor has sought relief in bankruptcy;

    (10)    The circumstances under which the debtor has contracted her debts and her demonstrated bona fides, or lack of same, in dealing with her creditors;

    (11)    The burden which the plan's administration would place on the trustee;

    (12)    The extent to which claims are modified and the extent of preferential treatment among classes of creditors;

    (13)    Substantiality of the repayment to the unsecured creditors;

    (14)    Other factors or exceptional circumstances;

    (15)    The type of debt to be discharged and whether the debt would be non-dischargeable under Chapter 7; and

> (16) The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.

Brown v. Gore (In re Brown), 742 F.3d 1309, 1316-17 (11th Cir. 2014); Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983). "'[T]he facts of each bankruptcy case must be individually examined in light of these various criteria to determine whether the chapter 13 plan at issue was proposed in good faith.'" Brown, 742 F.3d at 1317 (quoting Kitchens, 702 F.2d at 888). "[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith . . . confirmation must be denied." Shell Oil Co. v. Waldron, 785 F.2d at 936, 941 (11th Cir. 1986). Courts need not find actual fraud, but rather must "preserve the integrity of the bankruptcy process by refusing to condone its abuse." Id. As a debtor seeking confirmation of her Chapter 13 plan, Porter-Dennis has the burden of proving that she proposed her plan in good faith. *See* In re Fulmer, 535 B.R. 854, 858 (Bankr. M.D. Ala. 2015).

### III. ANALYSIS

The circumstances of the pawn transaction involving the Ford are strongly indicative of fraud.[5] Porter-Dennis went to a different TitleMax location than the one she had previously done business with and falsely represented that she was not in bankruptcy in order to obtain a new

---

[5] That is not to say TitleMax would be able to prove fraud. Jasmine Mitchell testified that TitleMax does not run a PACER search or a credit check before entering a pawn transaction, undermining its entitlement to rely on Porter-Dennis's representations. However, Porter-Dennis bears the burden of proof in this matter, so TitleMax need not prove its reliance was justified to prevail on its objection.

loan. Porter-Dennis's excuse – that she did not know she was in bankruptcy because she had not been to court – might be reasonable for an unsophisticated bankruptcy novice, but Porter-Dennis is a five-time bankruptcy filer who must be held to a higher standard of competence. *See* In re Danley, 540 B.R. 468, 479 n.12 (Bankr. M.D. Ala. 2015); In re Smith, 536 B.R. 478, 482 (Bankr. M.D. Ala. 2015). The idea that someone with Porter-Dennis's bankruptcy history would not know she was in bankruptcy strains credulity too far.

The Court finds further evidence that Porter-Dennis has not acted in good faith in her failure to disclose the Ford in her initial Schedule B. A vehicle is typically one of a Chapter 13 debtor's most valuable assets and thus is unlikely to slip through a debtor's recollection. Porter-Dennis testified that the Ford belongs to her son, but she knew that she was listed on its title. The Court infers that Porter-Dennis understands the legal implications of having title to the Ford and the requirement to disclose that in her bankruptcy. Of course, a Chapter 13 plan must provide unsecured creditors with at least as much as they would have received in a Chapter 7 liquidation, so the more assets a Chapter 13 debtor has, the more she must pay to keep those assets. *See* 11 U.S.C. § 1325(a)(4).

At the evidentiary hearing, counsel for Porter-Dennis indicated that she had offered to surrender the Ford to TitleMax, but Porter-Dennis also testified that the Ford is not running. In light of the other evidence, the Court is not impressed with Porter-Dennis's offer to surrender an inoperable vehicle – while attempting to cram down the other vehicle – as evidence of her bona fides. The Court concludes that Porter-Dennis has not proposed her amended plan in good faith.

Case 15-80607    Doc 44    Filed 12/17/15    Entered 12/17/15 15:25:56    Desc Main
Document    Page 6 of 7

## IV. CONCLUSION

Angela Porter-Dennis misrepresented to TitleMax that she was not in bankruptcy in order to obtain a post-petition loan via a pawn transaction, and failed to timely disclose the object of that pawn transaction in her bankruptcy schedules. Therefore, she has not proposed her amended plan to cram down these vehicles in good faith, and TitleMax's objection to confirmation is sustained.

Done this 17th day of December, 2015.

United States Bankruptcy Judge

c: Paul D. Esco, Attorney for Debtor
   Charles N. Miller, Attorney for Creditor
   Curtis C. Reding, Trustee